IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DEVON CURRY, | :: | PRISONER HABEAS CORPUS |
| Petitioner, | :: | 28 U.S.C. § 2254 |
| | :: | |
| v. | :: | |
| | :: | |
| ERIC SELLERS, Warden, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:14-CV-89-WSD-LTW |

## FINAL REPORT AND RECOMMENDATION

Petitioner is confined at Phillips State Prison in Buford, Georgia. Petitioner,

pro se, challenges under 28 U.S.C. § 2254 his judgment of conviction entered in

Rockdale County, Georgia. (Doc. 1.)

Respondent filed a response opposing the petition, (Doc. 5), and Petitioner filed

a reply, (Doc. 6). Respondent also filed the records from the state court proceedings.

(Doc. 7.)   For the reasons discussed below, the petition and a certificate of

appealability should be denied.

I.    **Background**

In September 2009, Petitioner pled guilty in the Rockdale County Superior

Court to armed robbery and possession of a firearm during the commission of a crime.

(Doc. 1 at 1.)  The trial court sentenced Petitioner to serve twenty-five years, with

twelve of those in prison and the remainder on probation. (*Id.*; Doc. 7-7 at 68.)

AO 72A
(Rev.8/82)

Because the colloquy between Petitioner and the trial court at the plea hearing

is central to Petitioner's claims, here are the relevant portions of the transcript of that

hearing:

BY THE COURT:

Q.   Are you Devon Curry?

A.   Yes, sir, Your Honor.

Q.   Can you read and write?

A.   Yes, sir, Your Honor.

Q.   Do you understand the English language?

A.   Yes, sir, Your Honor.

Q.   You know what's going on here today?

A.   Yes, sir Your Honor.

Q.   I'm holding in front of me a Plea of Guilty, Acknowledgement [sic] and Waiver of Rights form [that] has questions 1 through 25 and has a signature on the back of Devon Curry. Is that your signature?

A.   Yes, sir, Your Honor.

Q.   There are also the initials D.C. in response to questions 1 through 25. Did you place those initials there?

A.   Yes, sir, Your Honor.

Q.   Do those initials indicate your answers to the questions?

A.   Yes, sir, Your Honor.

Q.   Did you have a chance to read and understand each question before you put the initials there?

A.   Yes, sir, Your Honor.

Q.   You know you don't have to sign, say or do anything to show you're guilty of this offense unless you want to?

A.   Yes, sir, Your Honor.

Q.   You understand what you're charged with, don't you?

A.   Yes, sir, Your Honor.

Q.   You understand you have a right to a jury trial?

A.   Yes, sir.

2

Q.   Do you understand if you had a jury trial, the State would have to bring in witnesses to testify against you, and these witnesses would have to be placed under oath?

A.   Yes, sir, Your Honor.

Q.   You understand that you or your attorney, Ms. Armstrong, would have the right to question or cross examine any of these witnesses?

A.   Yes, sir, Your Honor.

Q.   You understand the Court can make any witnesses you want to have brought into court to testify for you in your defense?

A.   Yes, sir, your Honor.

Q.   You're represented by Ms. Armstrong. Are you satisfied with her services?

A.   Yes, sir, Your Honor.

Q.   Is there anything else she could have done for you that she hasn't done?

A.   No, sir, Your Honor.

Q.   Then understanding all your rights, do you wish to enter a guilty plea to one count of armed robbery and one count of possession of a firearm during the commission of a crime?

A.   Yes, sir, Your Honor.

Q.   Is your decision to plead guilty made freely and voluntarily?

A.   Yes, sir, Your Honor.

Q.   Are you are now under the influence of any drugs, medicine or alcohol.

A.   No, sir, Your Honor.

Q.   Do you want a jury trial?

A.   No, sir, Your Honor.

Q.   Do you want any witnesses brought into court?

A.   No, sir, Your Honor.

Q.   Has anybody made any promises or threats to cause you to plead guilty?

A.   No, sir, Your Honor.

3

Q.   Has anybody used any force to make you plead guilty?

A.   No, sir, Your Honor.

Q.   Do you understand that if you are not a citizen of the United States of America, the entry of this plea could result in your deportation?

A.   Yes, sir, Your Honor.

Q.   Have you been informed in writing and is this your signature regarding the time limits necessary to file a habeas corpus action?

A.   Yes, sir, Your Honor.

THE COURT:     All right, Mr. Curry, I find for the record that you freely and voluntarily waived your right to a jury trial and knowingly entered a plea, and I will accept that plea as freely and voluntarily given. Now is there anything you'd like to tell me other than what your lawyer said?

THE DEFENDANT:     No, sir, but thank you, Your Honor, for letting me explain my case. I'm ready to accept my consequences and be back to a positive part of my life.

(Doc. 7-7 at 77-80.)  Before that discussion between Petitioner and the judge, the prosecutor described the factual basis for the plea and the recommended sentence for the crimes to which Petitioner was pleading guilty. (*Id.* at 71-75.)

As noted above, Petitioner also executed a "Plea of Guilty, Acknowledgement [sic] and Waiver of Rights" form on the day he pled guilty. (*Id.* at 65-66.) The form contained twenty-five questions, each with a "Yes" or "No" blank. (*Id.*) The first question was: "Do you understand that you don't have to say, sign, or do anything that

4

will tend to show that you are guilty of the offense charged unless you want to?" (*Id.* at 65.)  Petitioner placed his initials in the "Yes" blank next to that question.  (*Id.*) Petitioner also affirmed, in response to another question on the form, that he understood the maximum sentence he faced for the two crimes to which he was pleading guilty was life imprisonment plus five years.  (*Id.*)  Attorney Wendi Armstrong represented Petitioner at his plea and sentencing hearing.

Petitioner did not directly appeal his judgment of conviction, but he filed a petition for a writ of habeas corpus in state court in December 2009.  (Doc. 1 at 1-2; Docs. 7-1, 7-3.)  The state habeas court denied relief.  (Doc. 7-5.)  In March 2013, the Georgia Supreme denied Petitioner a certificate of probable cause to appeal the state habeas court's ruling.  (Doc. 7-6.)

Petitioner asserts the following grounds for relief in his federal habeas petition:

1.  his guilty plea was not knowing and voluntary because:
    a.  Armstrong did not tell him that by pleading guilty he would be waiving his privilege against compulsory self-incrimination;
    b.  the plea form was defective because it did not advise him of the privilege against compulsory self-incrimination;
    c.  Armstrong should have objected to the defective form and requested the court to advise Petitioner on the record of the rights he was waiving by pleading guilty;

2.  his guilty plea was not knowing and voluntary because the plea form did not provide clear explanations about the privilege against compulsory

5

> self-incrimination, in violation of federal law and Georgia Uniform Superior Court Rule 33.8, and Petitioner's motion to withdraw his plea was denied in violation of his federal rights.[1]

(Doc. 1 at 4-5, 11-14.) Respondent contends that the state habeas court's decision on the claims in ground one is entitled to deference, the first portion of ground two does not state a ground for habeas relief, and Petitioner procedurally defaulted the last portion of ground two. (Doc. 5-1.)

## II.   Applicable Legal Standards

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus for a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). This power, however, is limited.

---

[1] Petitioner states in the claims section of his petition that his motion to withdraw plea "was denied," (Doc. 1 at 5), but states in his supporting brief that the motion "was never ruled upon," (*id.* at 13). A copy of Petitioner's brief in support of the motion to withdraw plea is in the record. (Doc. 7-4.) Nothing in the record indicates that the motion was adjudicated. In support of his contention that the motion "was never ruled upon," Petitioner cited and provided a copy of a letter from a lawyer in January 2010 stating that the lawyer would advise Petitioner of any developments on the motion. (Doc. 1 at 13, 16.) It thus appears that Petitioner's claim is that the motion was never adjudicated, not that it was denied.

6

A.     Review Under 28 U.S.C. § 2254

A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 131 S. Ct. at 1398 (citations and quotation marks omitted).

In applying 28 U.S.C. § 2254(d), a federal habeas court first determines the "clearly established federal law" based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The federal habeas court then determines whether the state court decision is "contrary to" that clearly established federal law, i.e., whether the state court "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or "confronts a set of facts that are materially

7

indistinguishable" from a Supreme Court decision "and nevertheless arrives at a [different] result." *Id.* at 405-06.

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it then determines whether the decision is an "unreasonable application" of that law, i.e., whether "the state court identifies the correct governing legal principle" from the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* at 409, 411; *see Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) ("For purposes of § 2254(d)(1), an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." (quotations omitted)). In short, when a state court applies clearly established federal law to a claim, federal habeas relief is not available unless the petitioner shows that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

8

B.     Ineffective Assistance Of Counsel

The standard for evaluating ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The analysis is two-pronged, but a court need not address both prongs "if the [petitioner] makes an insufficient showing on one."  *Id.* at 697.

The petitioner must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.* at 690.  A court must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689; *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . .").  Counsel is not incompetent so long as the particular approach taken could be considered sound strategy, *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), and "a petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden," *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc).  That burden is to show that "no competent counsel would have taken the action that his counsel did take" or would have failed to take the action his counsel did not take.  *Chandler*, 218 F.3d at 1315.

9

Under *Strickland*'s second prong, a petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. A petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When the deferential *Strickland* standard is "combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether 'there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) (citing *Harrington*, 131 S. Ct. at 788). "Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Id.* at 911.

10

### III.   Analysis

As explained below, the undersigned finds that Petitioner has not overcome the deference owed the state habeas court's decision and that Petitioner's claims of state-law violations provide no basis for relief under § 2254.

### A.   Ground One

Petitioner contends that he did not knowingly and voluntarily plead guilty because neither Armstrong nor the plea form he signed informed him of the privilege against self-incrimination. Petitioner contends that Armstrong should have objected to the defective plea form and asked the trial court to advise Petitioner of the rights he was waiving by pleading guilty.

The state habeas court rejected those claims. (Doc. 7-5.) That court credited Armstrong's testimony at the state habeas hearing that she explained Petitioner's rights to him, including the right against self-incrimination, and that he understood the rights he was waiving. (*Id.* at 4, 7.) That court also reviewed the plea form Petitioner completed and noted that Petitioner affirmatively answered the first question on the form, which asked if he understood that he did not have to say, sign, or do anything tending to show his guilt unless he chose to do so. (*Id.* at 4.) Finally, the state habeas court reviewed the transcript of the plea hearing and noted that the trial court asked

11

Petitioner the same question that appeared first on the plea form and Petitioner told the court he understood he had that right. (*Id.* at 5.)

The state habeas court then reviewed the law applicable to Petitioner's claim that he did not knowingly and voluntarily plead guilty and his claim that Armstrong rendered ineffective assistance. (*Id.* at 5-8.) That court cited and applied *Strickland* to the ineffective assistance claims. (*Id.* at 5-7.) As discussed in Part II.B, above, *Strickland* provides the clearly established federal law for an ineffective assistance of counsel claim. The state habeas court's ruling on the ineffective assistance claims thus was not contrary to clearly established law. The state habeas court cited and applied *Boykin v. Alabama*, 395 U.S. 238 (1969) to the plea validity claim. (*Id.* at 7-8.) As explained below, *Boykin* provides the clearly established law for that claim.

The U.S. Supreme Court was confronted in *Boykin* with a guilty plea entered at a hearing where "the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court," i.e., a "silent record." *Boykin*, 395 U.S. at 239, 242. The Supreme Court held "[i]t was error . . . for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Id.* at 242. That showing is required because "[s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is

12

entered." *Id.* at 243. The Supreme Court listed three such "important federal rights": the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers. *Id.*

*Boykin* provides the "clearly established federal law" applicable to Petitioner's claim that his plea was invalid. "[F]or a guilty plea to be valid and enforceable, '[t]he record must show . . . that an accused . . . intelligently and understandingly' waived the rights implicated by a guilty plea." *See Allen v. Thomas*, 161 F.3d 667, 670 (11th Cir. 1998) (quoting *Boykin*). "This Circuit . . . has construed *Boykin* to require only that courts establish a record that generally reveals affirmative awareness of the consequences of a guilty plea." *United States v. Simmons*, 961 F.2d 183, 187 (11th Cir. 1992) (citation and quotation marks omitted). "[T]here is no requirement that there be express articulation and waiver of the three constitutional rights referred to in *Boykin*, by the defendant at the time of acceptance of his guilty plea, if it appears from the record that the accused's plea was intelligently and voluntarily made, with knowledge of its consequences." *McChesney v. Henderson*, 482 F.2d 1101, 1110 (5th Cir. 1973) (rejecting § 2254's petitioner's *Boykin* claim); *see Van Poyck v. Wainwright*, 595 F.2d 1083, 1085-86 (5th Cir. 1979) ("We have repeatedly held, however, that *Boykin* does not mandate any strict rule of criminal procedure and that

a failure to advise a defendant of the right to trial by jury, right of confrontation, and right against self-incrimination does not in itself render the plea involuntary.") (rejecting § 2254's petitioner's *Boykin* claim).[2]

The state habeas court said the following in denying Petitioner's claim that his guilty plea was invalid:

> The record belies petitioner's claim that his plea was involuntary based upon a failure to advise petitioner of his right against self-incrimination. The 'advice and waiver' form, coupled with the testimony of Armstrong, is conclusive proof that petitioner was advised of this essential *Boykin* right.
>
> There is no requirement that any 'magic words' be used to inform petitioner of the rights he waives by entering a guilty plea. Rather, the trial court must make 'sure' that the defendant has a 'full understanding' of the rights waived. The language contained on the waiver form and conveyed by the trial court, coupled with the advice of the attorneys as relayed by attorney Armstrong, more than 'adequately conveyed to (petitioner) the core principles of the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment.'

(*Id.* at 7-8 (citations omitted).) That analysis demonstrates that the state habeas court reasonably applied clearly established federal law. As discussed above, *Boykin* does not require that particular words be used when advising a defendant of rights he is waiving by pleading guilty or even that the defendant be advised of all three

---

[2] In *Bonner v. Prichard*, 661 F.2d 1206, 1209-10 (11th Cir. 1981) (en banc), the U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions rendered by the former Fifth Circuit appellate court prior to October 1, 1981.

14

constitutional rights mentioned in *Boykin*. *See United States v. Gearin*, 496 F.2d 691, 696 (5th Cir. 1974) ("Specific judicial incantations of constitutional rights is not the litmus test under . . . the Constitution."). As the Supreme Court itself has stated, *Boykin*'s "requirement [is] that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Brady v. United States*, 397 U.S. 742, 747 n.4 (1970). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

The state habeas court concluded that the record affirmatively shows Petitioner pled guilty voluntarily and with full awareness of the rights he was waiving and the consequences of pleading guilty. The transcript of Petitioner's plea hearing and the plea form he completed demonstrate that the state habeas court's conclusion was reasonable under clearly established federal law.

Both the plea form and the trial court advised Petitioner that he did not have to "say, sign, or do anything that will tend to show that you are guilty of the offense charged unless you want to." (Doc. 7-7 at 65, 78.) The state habeas court reasonably concluded that the language used adequately advised Petitioner of his right against compulsory self-incrimination. Petitioner's contention that *Boykin* prohibits

15

"paraphrasing of the constitutional right waived" and requires the use of "exact terminology" is simply wrong. (*See* Doc. 1 at 14.)

Petitioner also is wrong in asserting that his plea was invalid because federal law does not specifically authorize the use of a plea form like the one he completed. Clearly established federal law neither requires nor prohibits the use of a plea form for purposes of assuring that a defendant's guilty plea is knowing and voluntary. *See Brady v. United States*, 397 U.S. 742, 747 n.4; *Boykin*, 395 U.S. at 243-44. It is the "totality of the circumstances evidenced by the record," which may include a plea form like Petitioner completed, that determines "whether a plea was voluntarily and intelligently made." *See Gearin*, 496 F.2d at 695-96. The state habeas court reasonably concluded that the plea form was not defective and that its use did not render Petitioner's plea invalid.

The state habeas court also reasonably concluded that Armstrong did not render ineffective assistance. Petitioner must "surmount a particularly high bar" to prevail on his ineffective assistance claims, as he must "overcome the doubly deferential standard applied to the decisions of counsel in habeas corpus review." *See Harris v. Sec'y, Fla. Dep't of Corr.*, No. 13-11318, 2014 WL 945125, at *4 (11th Cir. Mar. 12, 2014) (alterations and quotation marks omitted). If there is "any reasonable argument

16

that counsel satisfied *Strickland*'s deferential standard," Petitioner cannot obtain federal habeas relief. *See Harrington*, 131 S. Ct. at 788.

The trial court's record affirmatively shows that Petitioner was advised of and understood all three constitutional rights mentioned in *Boykin* and other rights, the charges against him, the sentence he faced, and the consequences of pleading guilty. There is thus a reasonable argument that Armstrong satisfied *Strickland*'s deferential standard by not objecting to the plea form or not asking the trial court to advise Petitioner on the record of the rights he was waiving (as the trial court did so). There also is a reasonable argument that any failure by Armstrong to personally inform Petitioner of the privilege against self-incrimination – the state habeas court credited her testimony that she did so inform Petitioner – was not deficient or prejudicial performance given that Petitioner was advised of that right by both the trial court and the plea form he completed. Petitioner affirmed his understanding of that right and that he was waiving it by pleading guilty. Petitioner has not overcome the double deference applicable to his claim that Armstrong rendered ineffective assistance.

Because Petitioner has not shown that the state habeas court's ruling on the claims in ground one was contrary to or an unreasonably application of clearly established federal law, he is not entitled to relief on ground one.

17

B.    Ground Two

Petitioner repeats in ground two his claim that his guilty plea was invalid under federal law because the plea form did not properly advise him of the privilege against self-incrimination.  As discussed above, Petitioner has not shown that the state habeas court's rejection of that claim was contrary to or an unreasonable application of clearly established federal law.

Petitioner's remaining claims in ground two provide no basis for federal habeas relief.  First, Petitioner cannot obtain relief under § 2254 on his claim that the plea form violated "State courts mandates for acceptance of a Guilty plea embodied in State Court Statutory Rule 33.8," (Doc. 1 at 5), because "federal habeas corpus relief does not lie for errors of state law," *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011). *See Hendrix v. Sec'y, Fla. Dep't of Corr.*, 527 F.3d 1149, 1153 (11th Cir. 2008) ("[A] violation of state law is not a ground for federal habeas relief.").

Second, Petitioner's claim that his motion to withdraw plea "was never ruled upon . . . [in] violation of his Federal rights . . . [and] defying all sound conception of the proper role of Judges," (Doc. 1 at 13), also is not cognizable because that is a claim that the state habeas court procedurally erred by not ruling on a motion.  It appears that Petitioner filed his motion to withdraw plea in the state habeas case in the

18

Superior Court of Macon County.  (Doc. 7-4 (listing that court and the state habeas case number on the brief supporting the motion).)  Petitioner dated the motion January 2010, although there is no indication in the record that it was received in the Macon County court, and that court did not mention the motion in its order denying habeas relief.  (*Id.* at 7; Doc. 7-5.)  Even if the state habeas court received the motion and failed to address it, that failure provides no basis for federal habeas relief.  *See Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[A]n alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court.").  Petitioner is not entitled to relief on his claims in ground two.

## IV.    Certificate of Appealability

A habeas petitioner may not appeal the dismissal of his § 2254 petition "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).  Rule 11 of the Rules Governing § 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue "only if the applicant has made a substantial showing of the

19

denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (quotation marks omitted).

As shown in Part III, above, the resolution of Petitioner's claims is not reasonably debatable.  Petitioner has not made a substantial showing of the denial of a constitutional right.  A COA is not warranted.

## V.   Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the petition for a writ of habeas corpus [1] and a certificate of appealability be **DENIED** and that this action be **DISMISSED**.

**SO RECOMMENDED** this 2 day of April , 2014.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

20