**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**DEVON CURRY,**

              **Petitioner,**

       **v.**                                          **1:14-cv-00089-WSD**

**ERIC SELLERS, Warden,**

              **Respondent.**

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Linda T. Walker's Final

Report and Recommendation ("R&R") [8], Petitioner's objections [10] to the R&R,

and Petitioner's Motion for Habeas Corpus Status Update [13].[1]

**I.    BACKGROUND**

       A.    The Plea

On September 9, 2009, Petitioner Devon Curry ("Petitioner") pleaded guilty

to one count of armed robbery and one count of possession of a firearm during the

commission of a crime.[2]  Petitioner initialed and signed an "Acknowledgement and

---

[1]     Petitioner sent a letter to the Court requesting an update on his Petition and
providing an updated address.  This was erroneously docketed as a motion [13].

[2]     Petitioner's conviction arises from an October 2008 armed robbery.
Petitioner allegedly "cased" the store minutes before two of his associates entered
and threatened the occupants with firearms.  The victims called the police, and
officers soon thereafter spotted the three men.  Although police attempted to pull

Waiver of Rights" form detailing the charges against him, indicating that Petitioner understood the terms of the plea agreement, and also that Petitioner understood the rights he was waiving.  During his plea colloquy with the court, Petitioner stated he understood the plea agreement and the rights he was waiving by entering a plea. The court found that Petitioner freely and voluntarily waived his right to a jury trial, and the court accepted his guilty plea.  The trial court sentenced Petitioner to 25 years, 12 to be served in state prison and the remainder to be served on probation. (See Tr. of Plea Hr'g [7.7 at 71-89]).  Petitioner did not appeal his judgment of conviction.  (Petition for Writ of Habeas Corpus [1] at 1).

B.      State Habeas Proceedings

1.      State Habeas Petition

On December 7, 2009, Petitioner filed his state habeas petition [7.1].  In Ground One of his petition, Petitioner asserted an ineffective assistance of counsel claim, arguing that his attorney, Quader Baig ("Baig"), did not sufficiently interview co-defendants who Petitioner believed would testify that he was not involved in the robbery.  (Id. at 5).  He also argued that his attorney had filed only

---

over the suspects, Petitioner did not stop the vehicle and instead sped away, requiring officers to engage in a high-speed chase.  Several officers eventually surrounded the car with guns drawn.  The car's occupants refused to comply with requests that they exit the vehicle, and officers were required to break the windows to remove them.  (See Tr. of Plea Hr'g at 2-5).

one motion "when it should have definitely been more," and that "[Baig] would send his assistant attorney" when Petitioner requested to speak with him.  (Id.).

In Ground Two, Petitioner asserted an Equal Protection claim, arguing that his "Co-Defendant in affidavit (notarized) stated [he] was not involved in crime." (Id.).

In Ground Three, Petitioner argued that his sentence was excessive because he "was just an innocent person supposedly giving the other defendants a ride from their school, and home."  (Id.).

In Ground Four, Petitioner argued that "there was no thorough police and state investigation."  (Id.).

Petitioner filed an "Amended Application for Writ of Habeas Corpus" [7.3], asserting a second ineffective assistance of counsel claim.[3]  He alleged in his amended petition that "counsel advised and allowed Petitioner to plead guilty absent informing Petitioner that by pleading guilty, he would be waiving the privilege against compulsory self-incrimination."  (Id. at 9).  Petitioner claimed that, had he been advised of this waiver, he "would have insisted on a jury trial."  (Id.). Petitioner last argued that the "conviction [was] obtained by a plea of Guilty which

---

[3]      In January 2010, Petitioner also filed a "Brief in Support of Withdrawal of Plea" [7.4].  Petitioner asserted that his "counsel's deficiencies . . . denied Petitioner his right to be tried by a jury, as he requested."  (Id. at 1).  He further argued that his plea was involuntary and that he was "misled."  (Id. at 3).

was not made knowingly and voluntarily." (Id.).

### 2.   State Habeas Evidentiary Hearing

On May 17, 2010, the Macon County Superior Court held an evidentiary hearing on Petitioner's habeas claims. Baig's co-counsel, Wendi Armstrong ("Armstrong"), testified at the hearing on the ineffective assistance of counsel and involuntary plea claims. Armstrong testified that she and Baig visited Petitioner in jail at least five times and reviewed the discovery package with him.[4] (Tr. of Habeas Hr'g [7.7] at 25:10, 23:22). Armstrong testified that, on July 15, 2009, the judge and district attorney offered Petitioner a 25-year sentence to serve 10 to 12 years in prison and the remainder on probation if he pleaded guilty. The offer, Petitioner was told, would expire on August 4, 2009. (Id. at 26:10).

Armstrong stated that "Mr. Curry was very reluctant to enter the plea," but that they discussed "the pros and cons" of the trial defense.[5] Petitioner's father was

---

[4]   The discovery package included a videotape of Petitioner entering the store shortly before the two co-defendants, and the two co-defendants' initial statements to police that all three had developed the plan to commit the robbery. (Id. at 21:8-14). Armstrong acknowledged the existence of a letter one of the co-defendants sent to the law office stating that Petitioner "had nothing to do with [the robbery]." (Id. at 29:14). This co-defendant's counsel later notified Armstrong that he would "absolutely not" assist Petitioner and that he "was absolutely going to implicate [Petitioner] if [he] proceed[ed] to trial." (Id. at 28:14).

[5]   Petitioner's defense would have been that he was unaware of the alleged robbery plan and that his co-defendants had coerced him to drive the getaway car.

included in the discussion.  Although his counsel believed the state had a strong case against Petitioner, they were prepared to proceed to trial up to the day of the plea hearing.  (Id. at 30:11).  Counsel also sent letters to Petitioner stating, "This is what we believe the state will allege; these are the rights you would surrender."  (Id. at 39:12-19).

On August 4, 2009, Petitioner discussed the plea offer with his attorneys from approximately 9:00 a.m. to 4:30 p.m.  During these discussions, Armstrong assured Petitioner that trial was still an option if he wanted to proceed, but that the 10 to 12 years to be served would "absolutely be off the table."  (Id. at 30:14-20). The plea hearing was rescheduled to September 9, 2009.  On September 9th, Petitioner spent the morning discussing the plea offer with his attorneys.  That afternoon, he entered his plea.  Armstrong testified that, "when the decision was actually made on the day of the plea, we had all come to the same conclusion, and Mr. Curry was absolutely making a knowing and intelligent plea."  (Id. at 40:3-7).

Prior to entering his plea on September 9, 2009, Armstrong twice reviewed the Acknowledgement of Waiver of Rights form Petitioner was required to sign. She read each statement to him.[6]  She testified that on either the first or second review of the form, she told him: "Look if you don't want to do this, don't do it.

---

[6]     Armstrong testified that the form was a standard form the Rockdale County judges required.  (Id. at 31:2).

But if you're going into court and you're going to change your mind, just let me know now. . . . Let's either do this or not do this.  If you want to go to trial, absolutely."[7]  (Id. at 31:17-24).

### 3.    State Habeas Court Order

On August 13, 2010, the state habeas court entered its order denying Petitioner's Amended Habeas Corpus Petition ("August 13, 2010, Order") [7.5].  The court concluded that Petitioner failed to satisfy either prong of the test in Strickland v. Washington, 466 U.S. 668 (1984), which requires Petitioner to show that (1) his counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment, and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different.  The court stated:

> The credible testimony of attorney Armstrong refutes [P]etitioner's generic claims that his attorneys failed to properly prepare for trial.  Petitioner did not specifically identify any motion of merit which should have been filed.  The court finds that Armstrong's explanations of the events leading to the plea and the waiver of [P]etitioner's right against self-incrimination more credible than the testimony of [P]etitioner, especially given the record of the plea.  The record

---

[7]    Armstrong told Petitioner to let her know this because she believed the court was likely to reject the plea if he "waffle[d]."  (Id. at 49:18).  Armstrong also discussed with Petitioner that the judge was unlikely to sentence him to the agreed-upon 10 to 12 years if he did not enter a plea on that day, and she told him that the maximum sentence was life if he was found guilty at trial.  (Id. at 52:4-16).

> establishes that [P]etitioner was competently and professionally
> represented by well-prepared attorneys with a definitive strategy.
> Petitioner has also failed to establish that the outcome would have been
> any different had [P]etitioner's attorneys acted differently.

(August 13, 2010, Order at 7).  The court found that "the 'advice and waiver' form, coupled with the testimony of Armstrong, is conclusive proof that [P]etitioner was advised of this Boykin right."  (Id. at 8).  The court concluded that Petitioner failed to offer credible evidence or a constitutional basis to support the remainder of his habeas claims.  (Id. at 8-9).

Petitioner appealed the August 13, 2010, Order to the Georgia Supreme Court.  On March 18, 2013, the Georgia Supreme Court denied Petitioner's Application for Certificate of Probable Cause to appeal the denial of his state habeas petition.

C.   Federal Habeas Petition

On January 10, 2014, Petitioner, proceeding *pro se*, filed in this Court his Petition for Writ of Habeas Corpus ("Petition") [1], pursuant to 28 U.S.C. § 2254. He asserts two grounds for federal habeas relief.  In Ground One, he argues his guilty plea was the result of ineffective assistance of counsel at the plea hearing. He alleges that the trial court "used a defective pre-plea form that was void of any notice against Compulsory Self-Incrimination" and that "[c]ounsel should have objected to the form, and requested the court to advise Petitioner on record of his

rights waived as a result of entering a Guilty plea as required by federal and state law." (Pet. at 11). Had counsel objected, Petitioner argues, he would have "exercise[d] his constitutional right to a jury trial." (Id. at 12).[8]

In Ground Two, Petitioner argues that he did not intelligently and voluntarily enter a guilty plea because the waiver form did not include a "notation of right against waiver of Compulsory Self-Incrimination; in violation of federal and state courts mandates for acceptance of a Guilty Plea embodied in Boykins [sic] . . . [and] also State Uniform Code 33.8." (Pet. at 13).

On March 6, 2014, Respondent filed his Brief in Support of Answer-Response [5.1]. He argues that the state habeas court's finding that Petitioner's assistance of counsel was not ineffective is entitled to deference. (Id. at 5). Respondent further argues that Petitioner's allegation that the plea form was

---

[8]    Petitioner argues also that, in denying his state habeas petition, the state habeas court failed to apply Tyner v. State, 289 Ga. 592 (Ga. 2011) overruled on other grounds by Lejeune v. McLaughlin, No. S14A1155, 2014 WL 6609631 (Ga. Nov. 24, 2014), and Boykin v. Alabama, 395 U.S. 238 (1969). In Tyner, the Georgia Supreme Court held that the defendant's guilty plea was not valid because, although he was advised of his right to a jury trial and to confront the witnesses against him, the record did not show that the defendant had been advised in any way of his right against self-incrimination, as required under Boykin. The court stated that, while "the record as a whole indicates that Tyner freely made an informed and very reasonable decision to plead guilty, with the assistance of able counsel and after colloquy in open court," the "advice and waiver of the '*three* Boykin rights' [i]s a strict constitutional requirement, with reversal the automatic consequence if any deviation is found to have occurred." Tyner, 289 Ga. at 595 (emphasis added).

defective is not a basis for federal habeas relief because "it does not allege a violation of a constitutional requirement."  (Id. at 9).

On April 2, 2014, Magistrate Judge Walker issued her R&R, recommending that the Petition be denied.  She determined that the state habeas court reasonably applied Boykin in determining that Petitioner had been advised of his constitutional rights and in finding that his guilty plea was knowing and voluntary.  (R&R at 14).  She also found that the state habeas court reasonably concluded, applying the standard in Strickland, that Armstrong did not render ineffective assistance of counsel.  (Id. at 16).  In her Order for Service of the Report and Recommendation ("Order for Service") [9], the Magistrate Judge advised Petitioner that he had fourteen (14) days from the date of service to file objections to the R&R.

On April 3, 2014, the Clerk of Court mailed the R&R and Order for Service to Petitioner.  On April 20, 2014, Petitioner notified the Court that on April 9, 2014, he was transferred from Phillips State Prison in Buford, Georgia, to the Riverbend Correctional Facility in Milledgeville, Georgia [12].  Petitioner did not submit, or advise that he intended to submit, objections to the R&R in his notice.

On April 18, 2014, Fredinand Woodruff ("Woodruff"), an inmate at Phillips State Prison, submitted a document [10, 11] to the Court stating that he had assisted

in drafting Petitioner's federal habeas documents.[9]  Because Petitioner took his files with him when he was transferred, Woodruff was unable to assist Petitioner with his objections.  Woodruff requested sixty (60) days to obtain Petitioner's files so he could file objections on Petitioner's behalf.

On July 28, 2014, Petitioner submitted a letter [13] requesting an update on the status of his Petition.  Although Petitioner acknowledged receiving correspondence from the Court on April 9, 2014, he did not mention the Court's directive regarding objections.[10]  Petitioner instead stated that he had made "repeated attempt[s] to reach out" to the Court and had "responded with brief to the Court."  He again stated that his address had changed.  Neither of Petitioner's submissions, however, indicates that he intended to submit objections himself.  It is unclear whether he believed that Woodruff submitted objections on his behalf or if he was aware of the request for an extension of time to file objections.[11]

---

[9]      Woodruff's letter was docketed twice, once as "Objections" to the R&R [10], and again as a "Motion for Extension of Time to File Objections" [11].

[10]     Although Petitioner does not specify the correspondence he received from the Court, it is appears that he received the R&R and Order for Service, which were sent to him four (4) business days before April 9, 2014.

[11]     A non-lawyer is not authorized to represent Petitioner in this action. However, because it is unclear whether Petitioner may have thought objections would be filed on his behalf, the Court conducts a *de novo* review of the R&R.

**II.     DISCUSSION**

> A.     <u>Legal Standards</u>
>
>> 1.     <u>Standard of Review of Section 2254 Claim</u>

To be granted federal habeas relief, a petitioner must demonstrate that the state court adjudication on the merits of his state habeas claim resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)(2). A state court's habeas determination of factual issues is presumed correct unless a petitioner presents clear and convincing evidence that the determination was erroneous. 28 U.S.C. § 2254(e)(1).

In evaluating a habeas petition under Section 2254(d), a federal court must first determine the applicable "clearly established Federal law, as determined by the Supreme Court of the United States." <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). Second, the court must determine whether a state court decision is "contrary to, or involved an unreasonable application of . . . clearly established" federal law. <u>Id.</u> The federal court should "not issue the habeas writ unless the state court was wrong as a matter of law or unreasonable in its application of law in a

given case." Id. at 385.  Whether a state habeas court's application of law was "unreasonable" is based on an objective standard.  A federal court may not issue a writ of habeas corpus simply because it concludes in its independent judgment that the state court decision was erroneous or incorrect.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

2.  Standard of Review of the Magistrate Judge's R&R

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. by Ernest S. v. State Board of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. Rep. No. 94-1609, 94th Cong., 2d Sess. (1976)).  With respect to those findings and recommendations to which a party has not asserted objections, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

For the reasons stated on pages 9-10 of this Order, and in view of Petitioner's *pro se* status, the Court conducts a *de novo* review of the R&R.

B.   <u>Analysis</u>

1.   Knowingness and Voluntariness of Plea

Petitioner argues that his guilty plea was not knowing and voluntary because he was not advised that, by entering such a plea, he would be surrendering his right against compulsory self-incrimination.  The Magistrate Judge evaluated the state habeas court's application of <u>Boykin</u> to determine if Petitioner knowingly and voluntarily waived his right to a jury trial.  The state habeas court found:

> The record belies [P]etitioner's claim that his plea was involuntary based upon a failure to advise [P]etitioner of his right against self-incrimination.  The "advice and waiver" form, coupled with testimony of Armstrong is conclusive proof that [P]etitioner was advised of this essential <u>Boykin</u> right.
> There is no requirement that any "magic word" be used to inform [P]etitioner of the rights he waives by entering a guilty plea.  Rather, the trial court must make "sure" that the defendant has a "full understanding" of the rights waived. . . . The language contained on the waiver form and conveyed by the trial court, coupled with the advice of the attorneys as relayed by attorney Armstrong, more than "adequately conveyed to [P]etitioner the core principles of the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment."

(R&R at 14 (quoting August 13, 2010, Order at 7-8)).  The Magistrate Judge found that this "analysis demonstrate[d] that the state habeas court reasonably applied clearly established federal law."  (R&R at 14).  The Court agrees.  The

Acknowledgement and Waiver of Rights form that Petitioner signed explained the

Constitutional consequences of Petitioner entering a guilty plea.  (Pet. at 17).  The

form asked, "Do you understand that you don't have to say, sign, or do anything

that will tend to show that you are guilty of the charge unless you want to?"

Petitioner initialed the slot labeled "yes" next to this question. [12]  At the September

9th plea hearing, the trial court asked several questions to confirm that Petitioner

was entering his plea freely and voluntarily.  The court asked, "Is your decision to

plead guilty made freely and voluntarily?"  Petitioner answered "yes."  The court

also asked, "[Do] you understand you have the right to a jury trial?" and "[Do] you

know you don't have to sign, say or do anything to show you're guilty of this

offense unless you want to?"  Petitioner also answered "yes" to both of these

questions.[13]  The Court finds that Petitioner entered his plea knowingly and

---

[12]     Although Armstrong testified that Petitioner was "very reluctant" to enter his plea, this does not discredit that Petitioner pleaded guilty knowing he was relinquishing his constitutional rights.  Petitioner engaged in lengthy discussions with his attorneys during the weeks before he entered his guilty plea.  During these discussions, Petitioner asked several questions, which Baig and Armstrong answered in written letters to Petitioner.  In these letters, Petitioner's counsel outlined the options available to him and the consequences of each, including the consequences of pleading guilty.

[13]     The Court accepts as true Petitioner's "yes" answers to the trial court's questions.  Cf. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made [by the defendant] during the [plea] colloquy are true.").

voluntarily.  The Court further finds that the state habeas court's decision was not contrary to or an unreasonable application of clearly established federal law and was not based on an unreasonable determination of facts in light of the evidence in the state habeas proceedings.[14]  28 U.S.C. § 2254(d)(1)(2); see McChesney v. Henderson, 482 F.2d 1101, 1110 (5th Cir. 1973) ("[T]here is no requirement that there be express articulation and waiver of the three constitutional rights referred to in Boykin by the defendant at the time of acceptance of his guilty plea, if it appears from the record that the accused's plea was intelligently and voluntarily made, with knowledge of its consequences."); accord United States v. Simmons, 961 F.2d 183, 187 (11th Cir. 1992) ("This Circuit . . .  has construed Boykin to require only that courts establish a record that generally reveals affirmative awareness of the 'consequences' of a guilty plea.") (internal citations omitted).

        2.     Defective Form

      Petitioner next argues that "the trial court used a defective pre-plea form that was void of any notice against Compulsory Self-Incrimination."  (Pet. at 11). Petitioner argues that the Acknowledgement and Waiver of Rights form should have included the exact phrase "Right Against Compulsory Self-Incrimination" because existing law "does not authorize paraphrasing of the constitutional right

---

[14]     The Court's analysis here also applies to the analysis of Ground Two claims, which are identical to those asserted here.

waived." (Id. at 14).  The state habeas court determined that the language advising

Petitioner that he did not have to "say, sign, or do anything that will tend to show

that you are guilty of the offense charged unless you want to," satisfied the Boykin

requirements.  This was a reasonable application of Boykin, including because

Petitioner was advised properly of his right against self-incrimination.[15]  See Brady

v. United States, 397 U.S. 742, 749 (1970) ("The voluntariness of [a] plea can be

determined only by considering all of the relevant circumstances surrounding it.");

McChesney, 482 F.2d 1101 (reasonable reading of record at plea hearing and in

state habeas hearing supported that defendant's plea was knowing and voluntary,

notwithstanding alleged lack of specific articulation of his rights under Boykin);

accord United States v. Gearin, 496 F.2d 691, 695-96 (5th Cir. 1974) ("Specific

judicial incantations of constitutional rights is not the litmus test under . . . the

Constitution.").  The right against self-incrimination imposes a minimum

requirement that his plea be the voluntary expression of his own choice.  Brady, 397

U.S. at 748.  The state habeas court's decision here was not contrary to or an

unreasonable application of clearly established federal law and was not based on an

---

[15]     The quoted language from the plea form is merely a plain language phrasing
of the right against self-incrimination.  See BLACK'S LAW DICTIONARY 1566 (10th
ed. 2014) (defining "self-incrimination" as "the act of indicating one's own
involvement in a crime . . . esp. by making a statement.").

unreasonable determination of the facts in light of the evidence presented in the state habeas proceedings.  28 U.S.C. § 2254(d)(1)(2).

       3.     Ineffective Assistance of Counsel

Petitioner argues that his counsel was ineffective in advising him regarding his decision to plead guilty.  To establish ineffective assistance of counsel, Strickland requires that Petitioner show (1) in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 690-691.

Petitioner argues that the first Strickland prong is satisfied because counsel should have objected to the plea form or asked the trial court to advise him of his Fifth Amendment right against self-incrimination.  The Magistrate Judge found that the plea form and judge's colloquy advised Petitioner of his right against self-incrimination, and that it was reasonable that counsel did not object to the form or ask that the trial judge advise him of this right.  She concluded that the state habeas court correctly applied the first prong of Strickland.  The Court agrees, and finds that the state habeas court's decision that counsel was not ineffective was not contrary to or an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts in light of the evidence

presented in the state habeas proceedings.  28 U.S.C. § 2254(d)(1)(2); see Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("The [Strickland] test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [trial] counsel acted . . . . ").

Petitioner next argues that his claim satisfies the second prong of Strickland because he would have proceeded to trial had he been advised of his right against self-incrimination.  Both the plea form and the trial judge, however, adequately advised him of his Fifth Amendment right against self-incrimination.  Even if Petitioner's counsel personally failed to advise him of this right, Petitioner was not prejudiced.  A petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1987).  Here, Petitioner was advised of his right against self-incrimination, and was fully aware that he was not required to admit guilt, and that doing so would lead to a prison sentence between 10 and 12 years.[16]  The Court thus finds that the state habeas court's decision that counsel was not ineffective was not contrary to or an unreasonable application of clearly established federal law and

---

[16]    The record clearly establishes that Petitioner was well-aware that he could go to trial if he chose to.

was not based on an unreasonable determination of the facts in light of the evidence presented in the state habeas proceedings.  28 U.S.C. § 2254(d)(1)(2).

>    4.    Ground Two Claims

Petitioner argues also that the plea form "did not provide notation of right against waiver of Compulsory Self-Incrimination; in violation of federal and state courts mandates for acceptance of Guilty Plea embodied in <u>Boykins</u> [sic] . . . and State Uniform Court Rule 33.8."  (Pet. at 13).  The Magistrate Judge determined that Petitioner did not show that the state habeas court's rejection of the <u>Boykin</u> claim was not contrary to or an unreasonable application of clearly established federal law.  The Court agrees with the Magistrate Judge and the state habeas court's conclusion.  The Court also rejects Petitioner's argument regarding Uniform Superior Court Rule 33.8 on the ground that federal habeas relief is only granted where a state court has violated established *federal law*.[17]  <u>See</u> <u>Swarthout v. Cooke</u>, 562 U.S. 216, 216 (2011) ("Federal habeas corpus relief does not lie for errors of state law.").

Finally, Petitioner argues he is entitled to federal habeas relief because the state court failed to issue a decision on his Motion to Withdraw his guilty plea. However, the state habeas court's failure to address the Motion is not a basis for

---

[17]    Rule 33.8(7) includes the right not to incriminate one's self.  As stated, the plea form and trial judge both clearly advised Petitioner of this right.

federal habeas relief.  See Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004) (holding that "while habeas relief is available to address defects in a criminal defendant's *conviction and sentence*, an alleged defect in a collateral proceeding does not state a basis for [federal] habeas relief.") (emphasis added).

### 5.    Certificate of Appealability

The Magistrate Judge denied Petitioner a Certificate of Appealability on the ground that Petitioner has not made a substantial showing of the denial of a constitutional right.  The Court agrees for the reasons stated in the R&R that a certificate of appealability should not be issued.  See 28 U.S.C. § 2253(c)(2) (a certificate of appealabilty may only issue if the applicant has made a substantial showing of the denial of a constitutional right).

## III.   CONCLUSION

Accordingly, and for the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Linda T. Walker's Final Report and Recommendation [8] is **ADOPTED** as supplemented by this Order.[18]

**IT IS FURTHER ORDERED** that Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [1] is **DENIED** and this action is **DISMISSED**.

---

[18]    For the reasons discussed in this Order, the Court denies Woodruff's request for an extension of time to file objections [10].

**IT IS FURTHER ORDERED** that a Certificate of Appealability, under Rule 11 of the Rules Governing Section 2254 Cases, is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Habeas Corpus Status Update [13] is **DENIED** as moot.

**SO ORDERED** this 15th day of December, 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE